**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT E. PRIMUS, in his official capacity,<br>   395 E Street, SW<br>   Washington, D.C. 20423,<br><br>      *Plaintiff*,<br><br>vs.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States<br>   1600 Pennsylvania Avenue, NW<br>   Washington, D.C. 20500,<br><br>PATRICK J. FUCHS, in his official capacity as Chairman of the Surface Transportation Board,<br><br>and<br><br>SURFACE TRANSPORTATION BOARD,<br>   395 E Street, SW<br>   Washington, D.C. 20423,<br><br>      *Defendants*. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. On August 27, 2025, Defendant Donald J. Trump removed Plaintiff Robert E. Primus from his position as a member of the Surface Transportation Board ("STB" or the "Board") absent a showing of inefficiency, neglect of duty, or malfeasance in office in violation of 49 U.S.C. § 1301(b)(3).

2. For almost 150 years, Congress has recognized the need for an independent, ideologically balanced entity to oversee the economic regulation of railroads and other interstate land and water transportation The STB is the successor of the Interstate Commerce Commission

("ICC"). In 1887, Congress created the ICC, the first independent agency, to more effectively regulate the railroad monopolies. Congress protected the Commissioners from presidential removal except in cases of inefficiency, neglect of duty, or malfeasance in office. Interstate Commerce Act, Pub. L. No. 49-41, § 11, 24 Stat. 379, 383 (1887). When the STB was created in 1995 to replace the ICC, the same protections carried over, and STB members continue to be removable only for "inefficiency, neglect of duty, or malfeasance in office." 49 U.S.C. § 1301(b)(3).

3. Congress also sought out diverse viewpoints on the Board by requiring that no more than three of its five members come from the same political party, at least three members have "professional standing and demonstrated knowledge" of issues of transportation or regulation, and at least two have experience in the private sector. *Id.* § 1301(b). This structure does not, however, prevent the President from shaping the composition and priorities of the Board. The President has the power to appoint new members to the Board with the advice and consent of the Senate. *Id.* § 1301(b)(1). And he retains control over the designation of a chairman to lead the Board. *Id.* § 1301(c)(1).

4. The STB's structure, mission, and functions, along with the terms set for members, demonstrate Congress's intent to provide the Board with continuity, stability, and insulation from political pressure exerted by the President. Because the Board members perform predominantly quasi-judicial and quasi-legislative functions and do not exercise substantial or considerable executive power, the restrictions on the President's authority to remove members at will are constitutional.

5. Mr. Primus has served on the STB since January 7, 2021, and his current five-year term expires on December 31, 2027.

6. When Defendant Trump removed Mr. Primus, he did not identify a reason, let alone one that satisfies the statutory requirement of inefficiency, neglect of duty, or malfeasance in office Therefore, Plaintiff Primus's removal was illegal. Defendants Fuchs and Surface Transportation Board have prevented Plaintiff Primus from performing his duties as a member in the wake of his removal.

7. Defendant Trump's illegal removal of Mr. Primus, as carried out by Defendants Fuchs and STB, has significant and damaging consequences for the work of the Board and its regulation of interstate transportation.

8. Mr. Primus seeks declaratory relief against all Defendants and injunctive relief against Defendants Fuchs and STB to enable him to perform his duties as a Board member as a remedy for Defendants' harmful and illegal actions.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1361.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

## PARTIES

11. Plaintiff Robert E. Primus is a Board member of the STB. He was appointed during President Trump's first term and confirmed by the Senate on September 16, 2020. Plaintiff Primus was confirmed by the Senate to a full term on the STB on December 20, 2022, for a term ending on December 31, 2027.

12. Defendant Donald J. Trump is sued in his official capacity as President of the United States. Defendant Trump resides at 1600 Pennsylvania Avenue, NW, Washington, D.C. 20500.

3

13. Defendant Patrick J. Fuchs is the Chairman of the Surface Transportation Board and is sued in his official capacity.

14. Defendant Surface Transportation Board is an independent federal agency headquartered in Washington, D.C., at 395 E Street, SW, Washington, D.C. 20423.

## STATUTORY BACKGROUND

15. The STB is an independent government agency tasked with the regulation of certain rail companies; motor carriers, brokers, and freight forwarders; pipeline carriers; and other transportation providers.

16. The STB is a successor agency to the ICC. Congress created the ICC in 1887 as the first regulatory commission in the nation's history. The Commission was a response to the substantial public need for interstate regulation of the railroad industry. The ICC originally was housed in the Department of Interior. But two years later after its creation, Congress made the Commission its own independent regulatory agency.

17. Concerned by the politics related to regulating the railroad industry, Congress created the ICC to serve as an independent, bipartisan group of experts to adjudicate issues such as reasonable shipping rates. Section 11 of the Interstate Commerce Act established the ICC as a five-member body that served five-year staggered terms, with each member nominated by the President and confirmed by the Senate. No more than three members could be from the same political party. Additionally, no member could be employed by or have a pecuniary interest in a common railroad carrier. The need for an independent to adjudicate issues such as reasonable rate determinations remains today, particularly in a rail industry where competition is limited on certain routes.

18. Congress also sought to ensure Commissioner independence by limiting the President's power to remove a Commissioner to "inefficiency, neglect of duty, or malfeasance in office." Interstate Commerce Act, Pub. L. No. 49-41, § 11, 24 Stat. 379, 383 (1887).

19. Congress also constructed the ICC as a quasi-judicial body that adjudicated matters such as the reasonableness of railroads and a quasi-legislative body that adopted rules. *See, e.g.*, *United States v. Baltimore & O.R. Co.*, 293 U.S. 454, 460 (1935) ("Upon the Commission, were conferred, besides some strictly administrative powers, both quasi legislative and quasi judicial functions.").

20. Over time, Congress would extend the ICC's role as economic regulator to other modes of interstate land and water transportation including motor carriers, water carriers, brokers, and freight forwarders.

21. Congress modeled numerous independent regulatory agencies after the ICC. The Supreme Court has characterized these as "traditional independent agenc[ies], run by a multimember board with a diverse set of viewpoints and experiences." *Seila Law LLC v. CFPB*, 591 U.S. 197, 205–06 (2020) (cleaned up). Several of these agencies also have explicit provisions limiting removal, using the "inefficiency, neglect of duty, or malfeasance in office" language or similar language.

22. In 1995, Congress passed the ICC Termination Act, which dissolved the ICC and created the Surface Transportation Board to perform most of the ICC's prior functions regulating interstate transportation. Under the 1995 Act, the STB was housed within the Department of Transportation, but it retained many of the structural features of the ICC that are typical of an independent agency: a multimember and bipartisan board of experts, appointed by the President and confirmed with the advice and consent of the Senate, serving a fixed term, and subject to

removal only for "inefficiency, neglect of duty, or malfeasance in office." ICC Termination Act of 1995 (the "1995 Act"), Pub. L. No 104-88, § 701, 109 Stat. 803, 932–33 (1995). Congress, in authorizing the change, emphasized the independence of the STB within the Department of Transportation: ''(c) INDEPENDENCE.—In the performance of their functions, the members, employees, and other personnel of the Board shall not be responsible to or subject to the supervision or direction of any officer, employee, or agent of any other part of the Department of Transportation." *Id.* § 703(c), 109 Stat. at 934.

23. Twenty years later, Congress passed the Surface Transportation Board Reauthorization Act of 2015 (the "2015 Act"), Pub. L. No. 114-110, 129 Stat. 2228 (2015). Though the STB retained its original purpose and powers, the Board was taken out of the Department of Transportation and formally converted into an "independent establishment of the United States Government." 49 U.S.C. § 1301(a).

24. In the 2015 Act, Congress maintained a board structure that largely originated with the Interstate Commerce Act. The Board consists of five members "appointed by the President, by and with the advice and consent of the Senate," and "[n]ot more than 3 members may be appointed from the same political party." 49 U.S.C. § 1301(b)(1). At least three of the members must be "individuals with professional standing and demonstrated knowledge in the fields of transportation, transportation regulation, or economic regulation." *Id.* § 1301(b)(2). At least two of the members must be "individuals with professional or business experience (including agriculture) in the private sector." *Id.*

25. The members serve five-year terms. *Id.* § 1301(b)(3). STB terms are staggered to avoid overlaps in appointments. When a member's term ends, the member may continue to serve, for up to a year, until a successor is appointed and qualified. *Id.* § 1301(b)(3).

26. The President may only "remove a member for inefficiency, neglect of duty, or malfeasance in office." *Id.*

27. The President designates a Chairman to the Board from among its members. *Id.* § 1301(c)(1). The Chairman is charged with administering the Board, with duties including the appointment and supervision of Board officers and employees and supervision of the expenditure of Board funds allocated for major programs and purposes. *Id.* § 1301(c)(2). The Board's vice chairmanship rotates among the members on an annual basis.

28. The Board describes itself as "the federal agency that is charged with the economic regulation of various modes of surface transportation, primarily freight rail. The agency has jurisdiction over railroad rate, practice, and service issues and rail restructuring transactions, including mergers, line sales, line construction, and line abandonments. The STB also has jurisdiction over certain passenger rail matters, the intercity bus industry, non-energy pipelines, household goods carriers' tariffs, and rate regulation of non-contiguous domestic water transportation." STB, About STB, https://perma.cc/W993-8HHJ.

29. The STB fosters a national freight rail network that provides efficient and reliable service to shippers that are a pillar of America's economy. The STB's work—including approving new rail lines and encouraging better operating methods—spur economic growth nationwide and benefit railroads, shippers, and consumers alike.

30. Consistent with its status as a traditional independent agency, the STB primarily exercises quasi-judicial functions as an adjudicator.

31. Under the governing statute, the Board holds adjudicatory proceedings that originate from a complaint or the Board's own initiative. The proceedings include testimony and written and oral submissions. For each proceeding, the Board issues a written report that is akin to

a judicial opinion in that it "shall include the findings, conclusions and the order of the Board and, if damages are awarded, the findings of fact supporting the award." 42 U.S.C. § 1306(a)(1). Additionally, Congress gave the Board the authority to issue regulations to carry out its work. *Id.* § 1321(a)(1).

32. The STB also exercises quasi-legislative functions through rulemaking and issuing reports. It exercises executive functions only in the discharge of these quasi-judicial and quasi-legislative functions.

## FACTUAL ALLEGATIONS

33. President Trump nominated Plaintiff Robert Primus to fill a vacancy on the STB on July 29, 2020. The Senate confirmed Mr. Primus on November 18, 2020, and he was sworn in on January 7, 2021. He served as Vice Chairman from February 2021 to February 2022. Mr. Primus was then nominated by President Biden on June 22, 2022, for a full five-year Board term and was confirmed by the Senate on December 20, 2022. He was sworn in for the five-year term on January 12, 2023. As designated by President Biden, Mr. Primus served as Chairman of the Board from May 2024 until January 2025. Mr. Primus's term as an STB member expires on December 31, 2027.

34. Prior to his appointment as an STB member, Mr. Primus had a long and distinguished career in policy and public service. Between 1991 and 2020, Mr. Primus served on the staff of seven members of Congress, including as a legislative assistant, legislative director, senior advisor, and chief of staff. Mr. Primus advised Representatives on issues relating to transportation, health care, and national security. He worked for sixteen years as Chief of Staff for Representative Michael Capuano of Massachusetts, who served on the House Committee on Transportation and Infrastructure and was ranking member on the Subcommittee on Railroads,

Pipelines, and Hazardous Materials. Mr. Primus also spent four years between 1995 and 1999 as a lobbyist with Van Scoyoc Associates, where he represented and advised firms on transportation, appropriations, and national security.

35. On August 27, 2025, Mr. Primus attended an Amtrak event unveiling new high-speed Acela trains. After he returned home, he noticed his office mobile phone had stopped working. After trying to reboot his phone and contact the STB's IT department, he checked his personal email and saw an email from Mary Sprowls, a member of the White House Presidential Personnel Office, that had been sent at 5:03 p.m. on that date. The entire body of the email reads as follows:

> Dear Mr. Primus,
>
> On behalf of President Donald J. Trump, I am writing to inform you that your position as a member of the Surface Transportation Board is terminated, effective immediately.
>
> Thank you for your service.
>
> Mary Sprowls  
> Presidential Personnel Office  
> The White House

As the email reflects, Mr. Primus was not removed for any reason at all, much less inefficiency, neglect of duty, or malfeasance in office.

36. Defendants Fuchs and STB cut off Mr. Primus's access to STB systems, email, and offices on August 27, 2025, and Mr. Primus has not been able to perform his duties as a Board member since that date.

## **CLAIM FOR RELIEF**

### **Ultra Vires Action in violation of the Surface Transportation Board Reauthorization Act of 2015**
### **49 U.S.C. § 1301**

37.   Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

38.   Plaintiff Primus is entitled to retain his role as an STB member because he was appointed and confirmed to a term that was not scheduled to end until December 31, 2027.

39.   Defendant Trump lacked authority to remove Plaintiff Primus prior to the expiration of his term. Under the Surface Transportation Board Reauthorization Act of 2015, the President may only remove a member "for inefficiency, neglect of duty, or malfeasance in office." 49 U.S.C. § 1301(b)(3).

40.   The President violated 49 U.S.C. § 1301(b)(3) by ordering the removal of Mr. Primus without a showing of inefficiency, neglect of duty, or malfeasance in office. Defendants Fuchs and STB also violated 49 U.S.C. § 1301(b)(3) by effectuating this removal and preventing Mr. Primus from exercising his duties as an STB member.

41.   There is a substantial and continuing controversy between Plaintiff Primus and the Defendants, and a declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish that Mr. Primus is a member of the STB.

42.   Injunctive relief against Defendants Fuchs and STB is necessary and appropriate to permit Mr. Primus to perform his duties as a Board member.

### **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

(a) Declare that the removal of Plaintiff Robert E. Primus as a member of the Surface Transportation Board was unlawful, in violation of the Surface Transportation Board Reauthorization Act of 2015, 49 U.S.C. § 1301(b)(3); that Plaintiff Primus remains a member of the STB, having been appointed by the President and confirmed by the Senate to a term ending on December 31, 2027; and that he cannot be removed by the President prior to the expiration of his term absent inefficiency, neglect of duty, or malfeasance in office;

(b) Enjoin Defendants Fuchs and STB from blocking Plaintiff Primus's access to his office or in any way treating Plaintiff Primus as having been removed, from impeding in any way his ability to fulfill his duties as a member of the STB, and from denying or obstructing his authority or access to any benefits or resources of the office;

(c) Direct Defendants Fuchs and STB and their subordinates, agents, and employees to provide Plaintiff Primus with access to the necessary government facilities and equipment so that he may carry out his duties during his term as a member of the STB;

(d) Issue a writ of mandamus ordering Defendants Fuchs and STB to refrain from blocking Plaintiff Primus's access to his office or in any way treating Plaintiff Primus as having been removed, from impeding in any way his ability to fulfill his duties as a member of the STB, from denying or obstructing his authority or access to any benefits or resources of the office, and requiring them to provide Plaintiff Primus with access to the necessary government facilities and equipment so that he may carry out his duties during his term as a member of the STB; and

(e) Grant any other relief this Court deems appropriate.

Dated: October 1, 2025     Respectfully submitted,

*/s/ Cynthia Liao*

Cynthia Liao (D.C. Bar No. 90036947)
Elena Goldstein (D.C. Bar No. 90034087)
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, D.C. 20043
(202) 808-1982 (Liao)
cliao@democracyforward.org

Jon M. Greenbaum (D.C. Bar No. 489887)
**JUSTICE LEGAL STRATEGIES PLLC**
P.O. Box 27015
Washington, D.C. 20038
(202) 601-8678
jgreenbaum@justicels.com

*Counsel for Plaintiff Robert E. Primus*