**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT PRIMUS, *Plaintiff*, v. DONALD J. TRUMP, *et al.*, *Defendants.* | No. 25-cv-03521 (DLF) |

# MEMORANDUM OPINION

Robert Primus served for years on the Surface Transportation Board, an independent federal agency. His tenure ended when President Trump removed him from office. Believing that the President fired him because of his race, Primus filed this action to contest his removal. Before the Court is the defendants' Motion to Dismiss, Dkt. 23. For the reasons that follow, the Court will grant the motion and dismiss the only remaining count of the complaint without prejudice.[1]

## I. BACKGROUND[2]

The Surface Transportation Board is a federal agency charged primarily with regulating freight rail. 49 U.S.C. §§ 1321, 10501. From its inception, the Board has operated as an independent agency. The Board must be balanced along partisan lines, with no more than three of its five members "appointed from the same political party." 49 U.S.C. § 1301(b). Members serve

[1] The language in this opinion tracks that in the memorandum opinion issued on October 31, 2026, in *Brown v. Trump*, No. 25-cv-01764 (D.D.C.). That case involves largely the same claims and briefing, and the Court resolves both cases for largely the same reasons.

[2] On reviewing a motion to dismiss, the Court takes the allegations in the complaint as true. Except as otherwise noted, the following facts are derived from Primus' complaint.

five-year terms, outlasting any one President's administration. *Id.* § 1301(b)(3). And the President may remove a member only "for inefficiency, neglect of duty, or malfeasance in office." *Id.*

In 2020, President Trump nominated Robert Primus to a seat on the Board, and the Senate confirmed him shortly thereafter. Am. Compl. ¶ 38, Dkt. 15. Primus filled the remainder of a five-year term set to expire in 2022. *Id.* President Biden then renominated him to a full term, and the Senate confirmed him again. *Id.* At the times relevant to this complaint, Primus was one of two Democrats and the only Black person to serve on the Board. *Id.* ¶¶ 42–43.

In 2025, President Trump removed Primus from office. *Id.* ¶ 40. The President offered no reason for the removal. *Id.* He simply thanked Primus for his service and terminated him, effective immediately. *Id.*

Primus brings this action against the President, the Board, and its Chair. *Id.* ¶¶ 17–19. Originally, Primus argued that his removal was unlawful under 49 U.S.C. § 1301, which limits the circumstances in which the President may remove the Board's members. Am. Compl. ¶¶ 57–62. But Primus withdrew this argument following the Supreme Court's decision in *Trump v. Slaughter*, 146 S. Ct. 2283 (2026). Pl. Br. at 6, Dkt. 25. Primus now pursues a single remaining claim—that the President fired him because of his race, in violation of the Fifth Amendment. Am. Compl. ¶¶ 63–68. He asks this Court to declare his removal unlawful and enjoin the defendants to restore him to office. The defendants now move to dismiss his claim of race discrimination. Dkt. 23.

## II. LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible

claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Id.* (citation modified). To "nudge a claim" into the realm of plausibility, the complaint must tend "to rule out 'obvious alternative explanations' for the defendant's conduct." *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 589–90 (2026) (quoting *Twombly*, 550 U.S. at 567) (citation modified).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *Iqbal*, 556 U.S. at 679, and the Court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). An "unadorned, the defendant-unlawfully-harmed-me accusation" will not suffice. *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. ANALYSIS

Primus fails to state a claim of race discrimination. The Fifth Amendment prohibits the federal government from discriminating based on race. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *see* U.S. Const. amend. V. But a facially neutral government action does not violate the Constitution merely "because it results in a racially disproportionate impact." *Arlington Heights*

*v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977). Rather, a plaintiff must allege that the challenged action was motivated, at least in part, by "racially discriminatory intent or purpose." *Id.* at 266. Although a disparate impact might be so "stark" that it permits no explanation "other than race," such cases are "rare." *Id.* Ordinarily, disparate impact alone is insufficient to establish discriminatory intent. *Id.* at 264–66.

Primus essentially tries to bring a disparate-impact claim. The crux of his complaint is that the President has "disproportionately remov[ed] Black government officials." Am. Compl. ¶¶ 42–56. Primus alleges, for instance, that the President fired only one of the two Democratic members of the Board—the member who was Black. *Id.* ¶¶ 42–43. And he alleges that this firing fit "a pattern," in which the President removed "75 percent of Black federal officials leading multimember agencies" but only "27 percent of white federal officials." *Id.* ¶ 45.

But this is not the "rare" case where disparate impact alone supports an inference of discriminatory intent. *Arlington Heights*, 429 U.S. at 266. In *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), for example, the Court found discriminatory intent when San Francisco permitted all but one of 80 white-owned laundries to operate but shuttered the over 200 Chinese-owned laundries. *Id.* at 373–74. Similarly, in *Gomillion v. Lightfoot*, 364 U.S. 339 (1960), the Court found discriminatory intent when a redistricting measure removed from a precinct at least 395 of 400 Black voters but not "a single white voter." *Id.* at 341. In both these cases, the vast disparity rendered the official action "unexplainable on grounds other than race." *Arlington Heights*, 429 U.S. at 266.

Not so here. Start with the disparate treatment between Primus and Karen Hedlund, the other Democrat on the Board. *See* Am. Compl. ¶¶ 42–43. The President may have fired Primus, while retaining Hedlund, because he believed that she held policy views closer to his own,

possessed more relevant expertise, or performed to a higher standard. The complaint does not discount these possibilities. Rather, it alleges almost nothing about Hedlund other than her race and partisan affiliation. *See id.*

Primus' broader statistical arguments suffer from a similar flaw. Although he alleges a "pattern" of Black officials' losing their jobs at higher rates, *id.* ¶¶ 45–47, he provides little information about the officials included in that comparison. The complaint, for example, says nothing about those officials' partisan affiliations. Nor does it identify their appointing Presidents, even though President Trump may have disfavored the appointees of his predecessor. Without such context, the allegations fail to "rule out obvious alternative explanations for the [President's] conduct." *Hikma*, 608 U.S. at 590 (citation modified).

The same is true of the complaint's allegations of racial disparities in the President's hirings. *See, e.g.*, Am. Compl. ¶¶ 54, 56. A President's appointments may reflect any number of legitimate considerations, such as partisan affiliation or preexisting relationships. Here, the complaint provides no context about the President's appointees from which to infer that race, rather than other considerations, accounts for the alleged disparities. Primus, again, fails to discount "obvious alternative explanations." *Hikma*, 608 U.S. at 590 (citation modified).

Because Primus' allegations of disparate impact do not, standing alone, support a plausible inference of discriminatory intent, the Court must consider whether other circumstances support such an inference. As pleaded, they do not. The Supreme Court in *Arlington Heights* "set forth a framework for analyzing 'whether invidious discriminatory purpose'" motivated "a government body's decisionmaking." *Reno v. Bossier Par. Sch. Bd.*, 520 U.S. 471, 488 (1997) (quoting *Arlington Heights*, 429 U.S. at 266). Under that framework, courts assess not only the "disparate impact on a particular group," but also other "circumstantial and direct evidence of intent," such

as "contemporary statements by" the decisionmaker. *Arlington Heights*, 429 U.S. at 268; *DHS v. Regents of the Univ. of California*, 591 U.S. 1, 34 (2020) (conducting this analysis at the pleading stage).

Applying that framework here, Primus' other allegations do not plausibly suggest that race motivated his removal. To add to his disparate-impact evidence, Primus relies on statements by administration officials attacking "diversity, equity, and inclusion" (DEI) efforts. Am. Compl. ¶¶ 48–53. But at most, these alleged statements suggest that the President opposed steps to *foster* diversity, not that he sought to *inhibit* diversity by firing people because of their race. In fact, the complaint attributes at least some of the President's firings to the removed officials' support for DEI initiatives. *Id.* ¶ 53. Firing people because of their policy views is not tantamount to firing them because of their race. Even considered alongside the alleged disparities in removals and appointments, administration officials' DEI-related statements do not plausibly suggest that race motivated Primus' removal.

Primus' remaining allegations do not fill the void. He emphasizes that his removal was a "departure from the norm," as his "removal contravened the [governing] statute." Pl. Br. at 21. But Primus does not dispute that statute is an invalid restriction on the President's removal power, challenged by the same administration. *Id.* at 6. The "obvious alternative explanation[]" is that the President did not view the statute as a valid restriction on his authority, not that he contravened it in order to discriminate. *Hikma*, 608 U.S. at 590 (citation modified). The Court is not inclined to give this fact significant weight. Considering the complaint as a whole, Primus has failed to state a claim.

Unable to prevail under *Arlington Heights*, Primus urges the Court to apply a different standard: the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973). *McDonnell Douglas* held that in actions under Title VII, a plaintiff alleging intentional employment discrimination may carry his initial burden by identifying a similarly situated comparator whom his employer treated differently. *Id.* at 800–02. The burden then "shift[s] to the employer to articulate some legitimate, non-discriminatory reason" for the disparate treatment. *Id.* The Court did not extend that framework to constitutional claims. *Id.* This Circuit, however, has applied that framework to a constitutional equal-protection claim brought under 42 U.S.C. § 1983. *Oates v. District of Columbia*, 824 F.2d 87, 90 (D.C. Cir. 1987).[3]

This Court need not decide whether *McDonnell Douglas* applies to suits brought directly under the Fifth Amendment because, even assuming it does, Primus has failed to state a claim. Under *McDonnell Douglas*, a plaintiff proceeding on "a comparator theory must plead enough facts about those comparators and the relevant context to allow a plausible inference that he was treated differently because of his race." *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530 (D.C. Cir. 2025); *accord Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014). Primus relies on one comparator: Karen Hedlund, the white, Democratic member of the Board whom the President did not fire. Am. Compl. ¶¶ 42–43. Although she and Primus held the same office and belonged to the same political party, the complaint does not describe whether they shared relevant similarities. The complaint is mostly silent, for instance, as to Hedlund's policy views, qualifications, or performance. Any of those facts might explain why President Trump retained her while removing Primus. Without more, the Court cannot "rule out obvious alternative

---

[3] Although Primus argues that *McDonnell Douglas* governs his claim of intentional discrimination, he does not argue that this Court should apply Title VII's prohibition on employment practices that inflict a disparate impact. *See Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Even if he did, his claim would fail because the "statistical disparities" he alleges are not "sufficiently substantial that they raise . . . an inference of causation." *See Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 995 (1988) (opinion of O'Connor, J.).

explanations for" their different treatment. *Hikma*, 608 U.S. at 590 (citation modified). Taking into account all of the allegations, including the similarities between Primus and Hedlund, the complaint does not plausibly allege that the President treated Primus differently because of his race. The Court will thus dismiss Primus' claim.[4]

**CONCLUSION**

For the foregoing reasons, the Court grants the defendants' Motion to Dismiss, Dkt. 23, and dismisses Count II without prejudice. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

November 5, 2026

[4] The defendants also argue that the Fifth Amendment does not constrain the President's removal power at all. On their telling, the removal power is absolute—and permits the President to discriminate openly based on race, sex, or anything else. The Court has no occasion to reach that theory because the complaint does not plausibly allege that the President discriminated based on race.